# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRI M. BOOKER, ESQ.<br>1252 N. 55th Street<br>Philadelphia, PA 19153<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA<br>1400 JFK Blvd., Room 180<br>Philadelphia, PA 19106<br><br>Defendant. | CIVIL ACTION<br><br>CASE NO.: 22-741<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CIVIL ACTION COMPLAINT

Plaintiff, Terri M. Booker, Esq. (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by the City of Philadelphia (hereinafter referred to as "Defendant," unless indicated otherwise) of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). Plaintiff asserts herein that she was unlawfully terminated from her employment with the City of Philadelphia in violation of these laws and seeks damages as set forth more fully herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charges with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Defendant City of Philadelphia is the largest city in the state of Pennsylvania. At all relevant times herein, Plaintiff worked for the Register of Wills, which is charged with issuing and maintaining marriage licenses, probating wills, and maintaining and docketing the records of the Orphan's Court.

9. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. In or about 2014, Plaintiff was hired as a part-time Clerical Aide for the Register of Wills, a position she retained until her promotion to full-time Assistant Solicitor in or about May of 2020. Plaintiff held the Assistant Solicitor position until her unlawful termination (discussed further *infra*) on or about July 6, 2021.

12. During her tenure with Defendant, Plaintiff was initially supervised by Chief Deputy, Regina Hairston (hereinafter "Hairston") until Hairston's separation from Defendant and then by Solicitor, Sharon Wilson, Esq. (hereinafter "Wilson"), until Plaintiff's termination. Plaintiff was generally supervised by Register of Wills, Tracey Gordon, Esq. (hereinafter "Gordon").

13. Throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job well.

**-Disability Discrimination/FMLA Violations-**

14. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15. Plaintiff has and continues to suffer from ADA qualifying health conditions, including but not limited to, sickle cell anemia (and associated complications), which during flare-ups (often caused by stress) causes her severe pain, swelling, increased risk of infection, and often hospitalization.

16. Despite Plaintiff's aforesaid disabilities and limitations, she was still able to perform the essential functions of her position; however, she (at times) needed some reasonable medical accommodations, such as time off for doctor's visits and to care for and treat for her aforesaid disabilities.

17. At all relevant times herein, Plaintiff's management, including but not limited to Hairston and Wilson were aware of Plaintiff's aforesaid health conditions because they had several discussions regarding the nature of same, and Hairston had recommended that Plaintiff and other immunocompromised employees work from home throughout the Covid-19 pandemic.

18. Additionally, Plaintiff utilized her sick leave or PTO time for her aforesaid health conditions on several occasions leading up to her unlawful termination.

19. For example, on or about May 3, 2021, Plaintiff reported a positive Covid-19 test and was requested by both Defendant's management and her doctor to quarantine. However, while quarantining, Plaintiff's aforesaid disabilities were exacerbated by the Covid-19 virus, and she developed pneumonia.

20. As a result of the exacerbation of her disabilities, on or about May 20, 2021, Plaintiff provided Defendant's management with a note from her doctor, excusing her from work

until June 4, 2021, "as it may take her awhile to regain her energy," after which she "could return back to work from home as working from home would allow her to take breaks as needed."

21. Respondent's management, including but not limited to Wilson, however, exhibited clear frustration and distaste for Plaintiff's health conditions and requests for time off by criticizing and scrutinizing her work and treating her in a hostile and derogatory way.

22. For example, despite providing Defendant's management with the aforesaid request to continue to work from home as a reasonable accommodation for her aforesaid health conditions (*see* Paragraph 20, *supra*), Wilson required that Plaintiff return to the office full time beginning on or about June 6, 2021, because the "Register needed to see [her] face" – even though Plaintiff could perform all of the functions of her job remotely.

23. During this same timeframe, Gordon also unfairly verbally berated Plaintiff for purportedly not completing certain job duties as a result of her aforesaid health conditions. On one particular occasion, Plaintiff was woken from sleep at home by a call from Gordon because a letter regarding Safety Measures for Covid-19 had not purportedly been emailed to staff. However, it was discovered that Plaintiff had completed the letter, but it had not been sent out by Wilson's secretary.

24. Wilson also repeatedly reprimanded Plaintiff for purportedly not performing her job duties correctly, while negatively referencing her aforesaid disabilities and requested accommodations, stating "I was trying to be considerate [of Plaintiff's disabilities], but you need to get back here [in the office] and get on this," despite that Gordon and others confirmed Plaintiff was completing work in the proper format and according to Wilson's requests.

25. Plaintiff reported Defendant's management's aforesaid discriminatory and retaliatory behavior to Human Resources ("HR") on several occasions, including that she believed

she was being treated unfairly as a result of her aforesaid health conditions, but her concerns were largely ignored.

26.     Plaintiff's aforesaid health conditions were exacerbated by the hostile work environment that she was subjected to by Defendant, which required additional medical treatment and intermittent time off for doctors' appointments.

27.     For example, in or about early June of 2021, Plaintiff applied for intermittent FMLA and provided completed forms from her physician, which stated Plaintiff would need monthly injections or infusions and intermittent leave as needed for flare-ups.

28.     Thereafter, on or about June 28, 2021, Plaintiff experienced a severely painful flare-up or "crisis" of aforesaid health conditions, for which she was admitted to the hospital.

29.     On her way to the hospital that day, Plaintiff texted Wilson that she was taking an "FMLA day" and was calling out of work because she could not move her arm. Plaintiff also spoke via phone with Special Assistant, Marie Weatherill (hereinafter "Weatherill") to inform them that she was heading to the hospital.

30.     Nonetheless, despite notifying Defendant's management that she was calling out of work and had properly exercised her FMLA rights earlier that morning, Plaintiff received a hostile email from Wilson, reprimanding her for missing work. Specifically, the following email rebuked Plaintiff for missing a meeting, despite having been hospitalized due to an unforeseen, emergency flare-up of her aforesaid health conditions while still having the presence of mind to reach out via text to several members of management en route to the hospital:

> Good evening, Terri:
>
> As you know I received your text this morning notifying me that you will not be coming in to work today because you can't move your arm. You said you would take an 'FMLA day.' I immediately acknowledged receipt of your text. I asked you in a text response to send your request for a day off to me in an email ***and***

> ***suggested that you can't use FMLA as a sick day***.  I also asked you to email HR of your belief that you are entitled to a [sic] 'FMLA sick day' for calling out today.
>
> You did not attend today's Monday Morning meeting which is part of your duties. You did not arrange for onsite phone coverage which was your responsibility. You did not send me an email requesting leave in violation of policy nor did you send an email to HR as I requested you do. You did not text, email me or alert me that you did not intend to do any of the above tasks. In a phone call last week and in person the week before that I told you it was your responsible to make sure that the phone was covered during the hours you are scheduled to work onsite. I confirmed with HR that you are not currently on FMLA nor do you have any available sick time left. You provided no information regarding how long you would be out or when you are expected to return.
>
> Nevertheless, I expect you to visit the doctor today and provide a note detailing how long you will be out and when you are expected to return to work. Not being able to move your arm sounds like a serious condition that require medical attention.

(Emphasis added).

31.    Very shortly after receiving Wilson's factually and legally [1] inaccurate and harassing email, Plaintiff was called (while hospitalized) by Deputy of Human Resources Charmain Collins, who berated Plaintiff for not ***emailing*** Wilson that she would be out of the office and to advise Plaintiff ***for the first time*** that her FMLA had not yet been approved, because she wanted to speak with Plaintiff's doctor about her requested accommodations.

32.    As soon as Plaintiff was physically able, despite being hospitalized and in severe (acute) pain, she sent an email to Wilson, Collins, and Gordon that same day (June 28, 2021),

---

[1] Contrary to Defendant's management's assertion, the use of FMLA leave as "sick" or medical leave is exactly the purpose of the statute. *See* 29 U.S.C.S. § 2601(b)(2) ("The purpose of this act is . . . to entitle employees to take reasonable leave for medical reasons"). Moreover, tt is well established that FMLA leave is permitted for whole days, partial days or medical-related breaks under the FMLA. *See e.g. Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192 (S.D. Cal. 1998) (Employees may take leave ***in any size increments*** and employers may account for the leave in the shortest period of time the payroll system uses to calculate absences). *See also Sabbrese v. Lowe's Home Centers, Inc.,* 320 F. Supp. 2d 311 (W.D. Pa. 2004) (explaining that *an employer is prohibited from counting medically necessary breaks against an employee* under the FMLA) (emphasis added); *Collins v. U.S. Playing Card Co.*, 466 F. Supp. 2d 954 (S.D. Ohio 2006) (same).

stating that she was in the hospital and did not know her return date at the time, as she had just been admitted.

33. Plaintiff sent a follow-up email to Wilson, Collins, and Gordon *just two minutes* later stating, "I will have the hospital send you documentation as soon as possible. Thank you."

34. On or about June 30, 2021, while Plaintiff was still hospitalized, Collins reached out to Plaintiff's primary doctor's office and spoke with a staff nurse, Jennifer Cohen, RN (hereinafter "Cohen"), who confirmed that Plaintiff was hospitalized until further notice.

35. Cohen later informed Plaintiff that she has spoken with Collins, who confirmed Plaintiff's FMLA leave had been approved by Defendant.

36. Over the next few days, while hospitalized, Plaintiff continued to stay in contact with Defendant's management, including but not limited to Chief Deputy, Rasheen Crew (hereinafter "Crew") regarding her hospital stay and the status of her aforesaid health conditions and need for continued medical leave.

37. Plaintiff was thereafter released from the hospital on or about July 2, 2021. However, before she could obtain a note from her primary doctor clearing her to return to work, she received a letter dated July 2, 2021, via Fed-ex from Wilson stating that she was "subject to termination" for "failing to report to work" from June 28, 2021 until July 2, 2021 – despite that Wilson and Collins were aware that Plaintiff had been hospitalized, and Collins had spoken to Plaintiff's primary doctor's office regarding same.

38. On or about July 6, 2021, Plaintiff forwarded a letter to Defendant's management from her doctor, confirming that she had been hospitalized from June 28, 2021 until July 2, 2021, for her aforesaid serious health conditions and could return to work on or about July 14, 2021.

However, instead of accommodating Plaintiff's serious health conditions, Defendant sent Plaintiff a letter dated July 6, 2021, confirming her termination for "job abandonment."

39. Despite Defendant's assertions to the contrary, Plaintiff consistently kept management and HR apprised of the status of her serious medical conditions, need for medical leave, and desire to return to work when released by her doctor, right up until her termination.

40. As a result, Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of (1) her actual/perceived/record of health conditions; (2) her requested accommodations (which constitutes illegal retaliation); (3) her expressed concerns of unfair treatment as a result of her disabilities; and (4) Defendant's failure to properly accommodate Plaintiff by failing to keep her job open and/or failing to reinstate her to her same or similar position, following her brief medical leave.

### -Gender and/or Race Discrimination-

41. Separately and apart from the discrimination and retaliation that Plaintiff experienced as a result of her disabilities and requested accommodations, Plaintiff was also subjected to discrimination, disparate treatment, and ultimately terminated because of her race and/or gender.

42. Plaintiff is a black (African-American) female.

43. During Plaintiff's tenure with Defendant, upon her observations and belief, Gordon favored Caucasian and/or male employees. By way of example, but not intended to be an exhaustive list, unlike her Caucasian and/or male co-workers, Gordon:

    a. Regularly dismissed Plaintiff's legal advice, and took the recommendations of Caucasian males, whether or not they had any legal experience;

    b. Criticized and scrutinized Plaintiff's work;

   c. During citation meetings, whenever Plaintiff would bring up certain facts, Wilson would dismiss them as irrelevant, but would praise male Caucasian employees that provided the same advice; and

   d. Plaintiff had been promised a raise upon her promotion to Assistant Solicitor, which she never received; and, upon information and belief, she was compensated substantially less than entry level Caucasian and/or male employees, despite have markedly more tenure, skill, and experience.

44. After consistently being subjected to clear disparate treatment and discriminatory harassment based on her race and/or gender by Defendant's management, Plaintiff was abruptly terminated on or about July 7, 2021, for pretextual reasons (set forth *supra*).

45. Plaintiff believes and there for avers that she was subjected to a hostile work environment and terminated because of her race and/or her gender.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; and [4] Failure to Accommodate)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

48. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

49. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

50. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent and/or block time off for doctors' appointments, treatment, and/or hospitalization.

51. Plaintiff was subjected to hostility and animosity due to her health conditions and/or requests for accommodations through demeaning, discriminatory, and disparate treatment toward her (as discussed *supra*).

52. Plaintiff complained of and objected to the aforementioned instances of disparate treatment, disability discrimination, and retaliation to Defendant's management

53. In response to Plaintiff's complaints, Defendant's management bombarded Plaintiff with increased hostility and animosity through verbal reprimands, pretextual admonishment, and disparate treatment.

54. Plaintiff was terminated from her employment with Defendant in close proximity to her objections to/complaints of disability discrimination and while she was still on a medical leave of absence, for pretextual reasons.

55. Defendant's management memorialized in writing that Plaintiff was terminated from her employment for purportedly "failing to report to work" from June 28, 2021 until July 2, 2021 and "job abandonment."

56. In reality, Plaintiff forwarded a letter to Defendant's management from her doctor, confirming that she had been hospitalized from June 28, 2021 until July 2, 2021, and had consistently kept management and HR apprised of the status of her serious medical conditions, need for medical leave, and desire to return to work when released by her doctor, right up until her termination.

11

57. Defendant failed to accommodate Plaintiff by (1) failing to keep her job open during her brief medical leave; and/or (2) failing to reinstate her to her same or similar position, following her brief medical leave.

58. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of (1) her actual/perceived/record of health conditions; (2) her requested accommodations (which constitutes illegal retaliation); (3) her expressed concerns of unfair treatment as a result of her disabilities; and (4) Defendant's failure to properly accommodate her (set forth *supra*).

59. These actions as aforesaid constitute violations of the ADA, as amended.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

62. Plaintiff requested leave for medical reasons from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

63. Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

64. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

65. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

66. Plaintiff was suspended and ultimately terminated in close proximity to her request for and while utilizing FMLA leave to care for and treat for her serious health conditions.

67. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (4) making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; and (5) failing to reinstate her to her same or similar position following her FMLA leave.

68. These actions as aforesaid constitute violations of the FMLA.

## COUNT III
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
([1] Race Discrimination; and [2] Hostile Work Environment)

69. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70. During Plaintiff's employment with Defendant, she was subjected to discrimination through verbal reprimands and derogatory and disparate treatment because of her race.

71. Plaintiff was treated disparately with respect to policies, compensation, and termination as compared to her Caucasian counterparts.

72. Plaintiff was ultimately terminated on or about July 7, 2021, for completely pretextual reasons.

73. Based on the foregoing, Plaintiff believes and therefore avers that her race was a motivating/determinative factor in the decision to terminate her employment.

74. These actions as aforesaid constitute violations of Title VII.

### COUNT IV
### Violations of 42 U.S.C. § 1981
### ([1] Race Discrimination; and [2] Hostile Work Environment)

75. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76. During Plaintiff's employment with Defendant, she was subjected to discrimination through verbal reprimands and derogatory and disparate treatment because of her race.

77. Plaintiff was treated disparately with respect to policies, compensation, and termination as compared to her Caucasian counterparts.

78. Plaintiff was ultimately terminated on or about July 7, 2021, for completely pretextual reasons.

79. Based on the foregoing, Plaintiff believes and therefore avers that her race was a motivating/determinative factor in the decision to terminate her employment.

80. These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

### COUNT V
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Gender Discrimination and [2] Hostile Work Environment)

81. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

82. During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment by Defendant's management through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of her gender.

83. Plaintiff was treated disparately with respect to policies, compensation, and termination as compared to her male counterparts.

84. Plaintiff was ultimately terminated on or about July 7, 2021, for completely pretextual reasons.

85. Based on the foregoing, Plaintiff believes and therefore avers that her gender was a motivating/determinative factor in the decision to terminate her employment.

86. These actions as aforesaid constitute violations of Title VII.

## Count VI
## Violations of the Pennsylvania Human Relations Act ("PHRA")

87. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

88. Plaintiff re-asserts and re-alleges each and every allegation of Counts I, III, IV and V of this Complaint, *supra*, as they constitute identical violations of the PHRA.

89. These actions as aforesaid constitute violations of the PHRA.

## Count VII
## Violations of the Philadelphia Fair Practice Ordinance ("PFPO")

90. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

91. Plaintiff re-asserts and re-alleges each and every allegation of Counts I, III, IV, V and VI of this Complaint, *supra*, as they constitute identical violations of the PFPO.

92. These actions as aforesaid constitute violations of the PFPO.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A.  Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.  Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.  Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.  Plaintiffs shall be permitted to have a trial by jury as requested in the caption of this Complaint.

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

        */s/ Adam C. Lease*
        Adam C. Lease, Esquire
        3331 Street Road
        Two Greenwood Square, Suite 128
        Bensalem, PA 19020
        (215) 639-0801
        *Attorneys for Plaintiff*

Dated:  August 31, 2022